IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEWART C. SMITH, | : | CIVIL ACTION NO. **1:CV-09-0889** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| OFFICER JOHN HANUSKA, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On May 11, 2009, Plaintiff, Stewart C. Smith, while an inmate at the State Correctional Institution at Albion ("SCI-Albion"), Albion, Pennsylvania[1], filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. § 1983 and § 1985(3). (Doc. 1). Plaintiff properly filed his action in the United States District Court for the Middle District of Pennsylvania since his claims took place in the Middle District of Pennsylvania, *i.e.* West Manchester Township, York County, Pennsylvania, and all named Defendants were located in the Middle District of Pennsylvania. Plaintiff filed two *in forma pauperis* Motions. (Docs. 2 and 7). Plaintiff did not complain about any conditions of confinement, and his present action is not related to his incarceration. (Doc.1, p. 1).

Plaintiff named the following four (4) Defendants: Police Officer John Hanuska; Detective David Bixler; PA State Parole Agent Brian Shaffer; and Police Officer(s) John Doe(s). (*Id.*). Defendants Hanuska and Bixler were employed by the West Manchester Township Police

---

[1]According to Plaintiff's latest court filing of September 21, 2010, Plaintiff is now confined at York County Prison, York, Pennsylvania. (Doc. 69).

Department.

Plaintiff averred that on June 4, 2007, Defendant Hanuska, a police officer, subjected him to profiling based on his prior dealings with the law by running his license plate through the National Crime Information Center (NCIC) without probable cause or reasonable suspicion of criminal activity. (*Id.*, ¶ 18). Plaintiff alleged that at the relevant time, he was merely sitting in his car at the side of the road in order to speak on his phone. (*Id.*, ¶ 1). Plaintiff stated that he was subsequently arrested and his vehicle was "ransacked" by Defendant Hanuska "along with John Doe(s)." (*Id.*, ¶'s 11-12). Plaintiff also stated that Defendant Hanuska added facts at both his preliminary hearing and his suppression hearing that were not included in the arrest affidavit of probable cause. (*Id.*, ¶'s 19-20). Plaintiff averred that the suppression (state) court judge ruled that the officer's actions were not justified and dismissed the criminal charges filed against him. (*Id.*, ¶ 21).

Plaintiff claimed that the alleged acts by Defendant Hanuska subjected him to the "use of excessive force, false arrest, illegal search and seizure, false imprisonment...emotional injuries including mental distress and anguish, loss of liberty, loss of employment, [un]equal protection of the law, malicious prosecution, and selective law enforcement practices all in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution." (*Id.*, ¶'s 18, 24). Plaintiff also claimed that these acts violated his civil and constitutional rights under color of state law pursuant to 42 U.S.C. § 1983. (*Id.*, ¶ 23).

Plaintiff averred that Defendants Bixler and Shaffer, in order to have him imprisoned for violating his parole, entered into a conspiracy on June 24, 2007, in violation of § 1985(3), to secure an arrest warrant and commence the subsequent judicial process, for reasons other than bringing

Plaintiff to justice and without probable cause. (*Id.,* ¶'s 27, 32). Plaintiff stated that Defendant Bixler, a police detective, wrote an affidavit of probable cause on June 24, 2007, based on the aforementioned events of June 4, 2007 because Defendant Shaffer, a state parole officer, requested that he do this so that Defendant Shaffer would be able to detain Plaintiff for violating his parole. (*Id.,* ¶'s 28, 30). Plaintiff claimed Defendant Bixler had no direct knowledge or involvement in the events of June 4, 2007, and that Bixler's affidavit resulted in Plaintiff's illegal confinement. (*Id.,* ¶ 25). Plaintiff claimed that the alleged acts by Defendant Bixler constituted a violation of 42 U.S.C. § 1985(3) and, as a result of these acts, he has "suffered emotional injuries including mental distress and anguish, loss of liberty, loss of employment, false arrest, false imprisonment, equal protection of the law, [and lack of] due process, all in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution." (*Id.,* ¶'s 28-29).

Plaintiff claimed the alleged acts by Defendant Shaffer, *i.e* contacting the West Manchester Police Department requesting his arrest so he could be detained, resulted in him suffering "emotional injuries including mental distress and anguish, loss of liberty, false arrest, malicious prosecution, equal protection of the law and abuse of the judicial process for personal use not authorized by the state to effectuate Plaintiff's loss of liberty in an arbitrary fashion in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (*Id.,* ¶ 33). Plaintiff stated that, "on June 24, 2007, Plaintiff was already in custody on a parole warrant and held at central booking for hours and hours awaiting to be re-arrested on charges from June 4, 2007 at the request of this agent." (*Id.,* ¶ 31).

Plaintiff averred that Defendant John Doe Officers, "ransacked" his vehicle on June 4, 2007, along with Defendant Hanuska, without probable cause nor a reasonable suspicion of criminal

activity. (*Id.,* ¶ 34). Plaintiff claimed that this act constituted a violation of the Fourth Amendment to the United States Constitution. (*Id.,* ¶ 35).

After screening Plaintiff's Complaint as required by the Prison Litigation Reform Act of 1995,[2] (the "PLRA"), we issued a Report and Recommendation on June 26, 2009, in which we recommended as follows: Plaintiff's claims of use of excessive force, false imprisonment, due process, equal protection, and malicious prosecution against Defendant Hanuska be dismissed without leave to amend these claims; Plaintiff's Fourth Amendment claims of false arrest and illegal search and seizure against Defendant Hanuska be allowed to proceed; Plaintiff's claims of a §1985(3) conspiracy, due process, false imprisonment and equal protection against Defendant Bixler be dismissed without leave to amend; Plaintiff's Fourth Amendment claim of false arrest against Defendant Bixler be allowed to proceed; all claims against Defendant Shaffer be dismissed without leave to amend; all official capacity claims against the remaining Defendants be dismissed to the extent that Plaintiff seeks monetary damages; that all Defendant(s) John Doe(s) be dismissed without prejudice; Plaintiff's claim for damages for emotional distress be dismissed since no physical injury was alleged; and, to the extent Plaintiff raises pendant state law tort claims, they be dismissed. (Doc. 11).[3]

After being granted an extension of time, Plaintiff filed Objections to our Report and Recommendations on July 21, 2009. (Doc. 19).

---

[2] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[3]*See also* 2009 WL 2982651 (M.D. Pa. 6-26-09).

On September 11, 2009, the District Court issued an Order adopting in part and rejecting in part our Doc. 11 Report and Recommendation, as follows:

1. The report and recommendation of the magistrate judge (Doc. 11) is ADOPTED in part and REJECTED in part as follows:

    a. The report is ADOPTED insofar as it recommends that plaintiff be permitted to proceed with the following (1) false arrest claims against defendants John Hanuska ("Hanuska") and David Bixler ("Bixler"), and (2) a claim asserting illegal search and seizure by defendant Hanuska.

    b. The report is ADOPTED insofar as it recommends that plaintiff's claims alleging conspiracy, violations of due process, violations of equal protection, malicious prosecution, excessive force, and violations of various state laws be dismissed.

    c. The report is REJECTED insofar as it does not afford plaintiff an opportunity to amend his complaint, see Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002), holding that a *pro se* litigant must be informed of his right to amend a complaint when doing so may potentially cure any deficiencies therein), and insofar as it recommends dismissal of plaintiff's false imprisonment claim against defendants Hanuska and Bixler.

2. Plaintiff shall be permitted to file, on or before October 9, 2009, an amended complaint that complies with this order.

3. The above-captioned case is REMANDED to the magistrate judge for further proceedings.

(Doc. 21) (footnotes omitted).

Since Plaintiff Smith failed to timely file his Amended Complaint and since he failed to comply with an Order of the Court, we issued an R&R on October 19, 2009, and recommended that this action be dismissed. (Doc. 22). Plaintiff filed objections to our R&R. (Doc. 23). On January 21, 2010, the Court issued an Order directing as follows:

1.    The report and recommendation of the magistrate judge (Doc. 22) is REJECTED insofar as it recommends that plaintiff's action be dismissed in its entirety.

2.    Plaintiff's deficiently-pled claims, which are identified in Paragraph 1(b) of the order of court (Doc. 21) dated September 11, 2009 are DISMISSED with prejudice.

3.    The above-captioned case is REMANDED to the magistrate judge for further proceedings.

(Doc. 24, p. 2).

Thus, the Court permitted Plaintiff to proceed with his false arrest claims against Defendants Hanuska and Bixler, and his illegal search and seizure claim against Defendant Hanuska relating to the June 4, 2007 incident. Plaintiff's remaining claims are under the Fourth Amendment. Plaintiff's other claims were dismissed with prejudice.

We then issued an Order directing the U.S. Marshal to serve the two remaining Defendants, Bixler and Hanuska, with Plaintiff's Compliant. (Doc. 27). Defendants Bixler and Hanuska jointly filed their Answer with Affirmative Defenses to Plaintiff's Complaint on April 5, 2010. (Doc. 31). Subsequently, we set scheduling deadlines on May 7, 2010, and extended the deadlines on August 10, 2010. The discovery deadline was set at November 5, 2010, and the dispositive motion deadline was set at December 3, 2010. (Doc. 42).

On August 13, 2010, the Court issued the following Order:

> **AND NOW, this 13th day of August, 2010, IT IS HEREBY ORDERED THAT** Plaintiff's Motion to Quash/Dismiss (**Doc. 40**) Defendants' Motion to Take Deposition from Stewart C. Smith and for Extension of Deadlines (Doc. 48) is **DENIED**. Plaintiff's testimony at a suppression hearing in his state court criminal case and the state court's ruling in Plaintiff's criminal case do not preclude Defendants from deposing Plaintiff in the instant § 1983 civil rights action. [FN1]
>
> FN1. The Court granted Defendants' Doc. 38 Motion on August 10, 2010. (Doc. 42).

(Doc. 43).

On August 16, 2010, Plaintiff filed a "Motion to Vacate Judgment." (Doc. 44). Plaintiff moved the Court to vacate its August 10, 2010 Order (Doc. 42) which granted Defendants' Motion for Leave to Depose Prisoner and for Extension of Deadlines.

On August 20, 2010, the Court denied Plaintiff's "Motion to Vacate Judgment." (Doc. 47). Subsequently, Plaintiff was deposed by Defendants on September 17, 2010, and Defendants submitted excerpts from his deposition as an exhibit to their pending Summary Judgment Motion. (Doc. 79, Ex. D).

On August 24, 2010, Plaintiff filed a 3-sentence, 1-page Motion for Leave of Court to Add new Defendants and Claims pursuant to Fed.R. Civ. P. 15(a), along with a 5-sentence, 1-page brief. (Docs. 48 and 49). Plaintiff also filed a proposed Amended Complaint. (Doc. 52). On September 7, 2010, Defendants jointly filed their opposition Brief to Plaintiff's stated Motion. (Doc. 53). Plaintiff filed his Reply Brief on September 21, 2010. (Doc. 58).

Also, on August 10, 2010, Plaintiff filed a Motion for Summary Judgment, and on August 17, 2010, he filed a 7-sentence support Brief. (Docs. 41 and 45). On September 10, 2010, Plaintiff filed a second Motion for Summary Judgment with an attached exhibit. (Doc. 56). Plaintiff failed to file a support brief with respect to his Doc. 56 Motion for Summary Judgment, and he failed to file statements of material facts as required by Local Rule 56.1, M.D. Pa., with respect to both of his Motions for Summary Judgment. See *Hodge v. United States*, 2009 WL 2843332 (M.D. Pa.).[4]

---

[4]Plaintiff was provided with a copy of the pertinent Local Rules of this Court. (Doc. 5).

On September 16, 2010, Defendants filed a brief in opposition to Plaintiff's Doc. 41 Motion for Summary Judgment. (Doc. 57).    On September 30, 2010, we issued an Order and denied Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 48). (Doc. 66).

Also, on September 30, 2010, we issued an Order and deemed Plaintiff's Doc. 56 Summary Judgment Motion as withdrawn due to Plaintiff's failure to file a support brief. (Doc. 65).

On October 12, 2010, we issued an Order and deemed Plaintiff's Doc. 59 Summary Judgment Motion as withdrawn due to Plaintiff's failure to file a support brief. (Doc. 68).[5]

Presently, Plaintiff's three (3) Motions for Summary Judgment, namely, Docs. 41, 61 and 73, are ripe for disposition. Also, Defendants' Motion for Summary Judgment, Doc. 76, is ripe for disposition.

Plaintiff and Defendants filed exhibits in support of their respective Summary Judgment Motions.[6]

Since Plaintiff's three Motions for Summary Judgment are largely redundant, we, for the most part, consider his latest motion, Doc. 73, which was filed with a Statement of Material Facts ("SMF"), Doc. 75 and attached exhibits, Exs. A and B.

**II. Statement of Material Facts**.

As stated, Plaintiff and Defendants filed their SMF  (Docs. 75 and 78, respectively), as required by Local Rule 56.1, M.D. Pa.  Also, Plaintiff and Defendants filed their own SMF, as well as a paragraph-by-paragraph responses to the other party's SMF, as they were obliged to do. (Docs.

---

[5]We note that Plaintiff 's two Motions for Summary Judgment which we deemed to be withdrawn were essentially the same as his currently pending Docs. 41, 61 and 73 Summary Judgment Motions and Plaintiff 's exhibits were the same.

[6]We were assigned this case for pre-trial matters pursuant to 28 U.S.C. §636(b)(1).

82 and 83). Further, as stated, Plaintiff and Defendants submitted exhibits. However, as Defendants repeatedly point out, Plaintiff failed to reference the record to support his facts stated in his SMF as required by Local Rule 56. 1. (*See* Doc. 75).

Defendants properly filed their SMF in support of their Summary Judgment Motion (Doc. 78), as required by Local Rule 56.1 of M.D. Pa., and their facts are all properly supported by evidence. Plaintiff did not properly responded to Defendants' SMF as required by Local Rule 56.1, M.D. Pa., since he did not cite to any evidence with respect to his denials of Defendants' SMF. (Doc. 82). *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michatavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers, 2008 WL 3540526 (M.D. Pa.); Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed). Regardless of Plaintiff Smith's failure to properly deny Defendants' statement of facts, we refer to facts below that are supported by the evidence.

A Criminal Complaint was filed against Plaintiff by Defendant Bixler, a detective with the West Manchester Township Police Department, on June 24, 2007, charging Plaintiff with one count of violating Title 35 Health and Safety Chapter 6 of the PA Controlled Substance, Drug, Device and Cosmetic Act, 780-113(a)(31) & (32), *i.e.* possession of a small amount of marijuana as well as unknown pills (4) and possession of drug paraphernalia, *i.e.*, a crack cocaine pipe. (Doc. 79, Ex. B). *See Com. of PA v. Smith*, No. CP-67-0005087-2007, York County Court of Common Pleas

("CCP").[7] Defendant Bixler signed the Affidavit of Probable Cause attached to the Criminal Complaint which was based on a June 4, 2007 traffic incident involving Defendant Officer Hanuska, also of the West Manchester Township Police Department, and Plaintiff. Defendant Bixler signed the June 24, 2007 Criminal Complaint and Affidavit of Probable Cause against Plaintiff since Defendant Officer Hanuska was on vacation. Plaintiff was on Pennsylvania state parole at the time, and the Pennsylvania State Parole Board was notified of Plaintiff's arrest.

Defendant Bixler's June 24, 2007 Affidavit of Probable Cause stated as follows:

On 06/04/2007 at approx. 00:21 hours Officer John Hanuska was on patrol on Old Salem Rd between Hokes Mill Rd-W College Ave. Officer Hanuska noticed a white Chevrolet Cavalier parked along east side of roadway. Officer Hanuska pulled in behind vehicle. The defendant Stewart C Smith the sole occupant, sat up from reclined position and concealed unknown item in center console. Smith was removed from vehicle and patted down for officer safety. Officer Hanuska felt rolled up sandwich bag in Smith's front left pants pocket. Sandwich bag contained substance that felt consistent with marijuana and pills. Officer Hanuska removed sandwich bag from Smith's pocket. Sandwich bag contained small amount marijuana and 4 as yet to be identified pills. Officer Hanuska checked center console and found crack pipe. Smith was arrested for possession of narcotics and paraphernalia. The suspected marijuana was field tested and did test positive.

Based on the above facts, this Affiant request a warrant charging the defendant with one count of violating Title 35 Health and Safety Chapter 6 The Controlled Substance, Drug, Device and Cosmetic Act 780-113(a)(31)(32). The complaint will be amended when the results are received from the PSP [Pennsylvania State Police] on the pills.

(Doc. 79, Ex. B, p. 4).

On July 19, 2007, the Pennsylvania State Police Laboratory issued a Report and indicated that the plastic bag of vegetable matter Defendant Hanuska found in Plaintiff's front left pants

---

[7]Plaintiff was charged with two drug violations in the one count under two subsections of Title 35 Health and Safety Chapter 6 of the PA Controlled Substance, Drug, Device and Cosmetic Act, 780-113(a)(31) and (32).

pocket during his June 4, 2007 search contained 3.0 grams of marijuana. (Doc. 79, Ex. E). No controlled substances were found in the four pills Defendant Hanuska found during his search. (*Id*.).

On August 23, 2007, Plaintiff had a preliminary hearing with respect to the drug charges Defendants filed against him under Title 35 Health and Safety Chapter 6 of the PA Controlled Substance, Drug, Device and Cosmetic Act, 780-113(a)(31) and (32). (Doc. 79, Ex. F). Defendant Hanuska testified at Plaintiff's preliminary hearing. The Magisterial District Judge found that a *prima facie* case was established regarding the drug possession charges Defendants filed against Plaintiff and the charges were bound over to the York County Court of Common Pleas ("CCP") for trial. (*Id*.).

After issuance of the Criminal Complaint and after the charges were bound over to the CCP, Plaintiff filed a motion to suppress the evidence against him and a habeas corpus motion. A suppression hearing was held on January 9, 2008, before the CCP. (Doc. 79, Ex. A).

During the January 9, 2008 Suppression Hearing conducted by the CCP, Defendant Officer Hanuska testified on direct exam as follows with respect to the the June 4, 2007 incident:

Q.    Do you remember if you were on duty on June 4th of last year? [2007]

A.    Yes, sir, I was.

Q.    And do you remember which shift you were working?

A.    As I recall, it was the midnight shift, 11:00 a.m. to 7 p.m.

Q.    Can you remember if you were in full uniform in a marked patrol car?

A.    Yes, sir.

Q.    And do you recall where you were at around 12:20 that morning?

A.      Yes, sir.  I was traveling on Old Salem Road between Hokes Mill Road and West College Avenue.

Q.      And can you describe what the area  - - is it, you know, a city area? Is it a rural area?

A.      It's rural.  It's a dark road.  Crop fields, farm fields on either side of that road.  No streetlights.  No lane markers.  It's just a rural back country road, I guess you could call it.

Q.      So just one lane of travel in each direction?

A.      Correct.

Q.      And what   - - did you come upon any vehicles on that road?

A.      Yes, sir.  There was a white Chevy Cavalier parked on the east side of the roadway.

Q.      And what did you do when you saw the vehicle?

A.      I pulled in behind that vehicle.

Q.      Do you recall if the vehicle was running?  If its lights were on?

A.      I don't recall.  I don't  - - I don't think it was.  I think it was turned off, and I believe the lights were off.

Q.      Why did you pull behind the vehicle?

A.      To spot-check it, to find out whether the individual needed help. That area is, I've arrested several drug users there, sex crimes, I've encountered stolen cars parked along that road, and quite frequently folks go back there to dump trash.

Q.      So after you pulled behind the vehicle, did you turn on your emergency lights or  - -

A.      I don't think I turned my lights on.  As I recall, I think I just put my back flashers on just to indicate for traffic coming up behind me that there was a hazard ahead.

Q.      Were your headlights still on?

A.      Yes.

Q.      What happened after you stopped and pulled behind this vehicle?

A.      I opened my door and I saw the individual who  - - I didn't see anybody in there until he sat up.  He had, apparently, reclined back in his seat.

As I opened my door, I saw him spin around, look at me, and then reach in between the front seats and in an apparent attempt to hide something from my view.

Q.      And you could see this through the rear windshield of his car or  - -

A.      Yes, sir.  Yes, sir, through the rear windshield of his vehicle.

Q.      What then did you do?

A.      I also illuminated with my light as I was walking up.

Q.      When you say your light  - -

A.      My flashlight.  I'm sorry.

Q.      Okay.

A.      I approached in a safe fashion and asked him to step out of the vehicle in concern for my safety at that point.

Q.      And so you had him step out of the vehicle.  What then did you do?

A.      I handcuffed him and patted him down looking for weapons.

Q.      Is that because of the movements he made?

A.      Yes, sir.

Q.      Did anything happen during the pat-down?

A.      Yes.  In his left pants pocket, I felt a baggie.  Based on my training and experience, and in the numerous drug arrests I've made in the past, I was fairly certain it was marijuana.

I could also feel pills within that baggie.

Q.      Now, did - - when you say you patted him down and felt that, was your hand open or were you grasping, if you recall?

A.      It was open initially.  And then I was suspicious of the object, and I felt it; and once I was comfortable with what I believed it was, I removed it from his pocket.

Q.      I know you said from your experience.  Did it feel soft?  I mean, how could you tell what it was?

A.      It felt like marijuana.  It felt like the consistency of marijuana, and the pills were unmistakable.

Q.      You're familiar with how marijuana feels?

A.      Yes, sir.

Q.      And you knew it right away?

A.      Yes, sir.

Q.      After you felt the marijuana, what then did you do?

A.      I advised him he was under arrest, and I placed him in my patrol car.

Q.      Did you pull the marijuana out?

A.      Yes, sir.  Yes, I did.

Q.      And did you view what you pulled out?

A.      Yes, I did.

Q.      What was it that you pulled out?

A.      It was marijuana, and then there were four pills in there.  To this day, I don't know what they were.

Q.      Was it a large amount of marijuana?

A.      Just a small amount.

Q.      Was it in one baggie?

A.      Yes, it was.

Q.      And after you pulled out the marijuana, did you do any field testing on it?

A.      After I took it to my station later on.

Q.      Okay.

        Did it field test positive?

A.      Yes, it did.

Q.      And after you pulled that out back at the scene, what then did you do after you told him he was under arrest?

A.      I put him in the back of my patrol car.

Q.      Did you go back to the vehicle at any point?

A.      Yes, I did.

Q.      And why did you do that?

A.      Just my suspicions about what he had stuffed between the seats. I was concerned it might have been a weapon, and I didn't want to walk away from the vehicle not knowing there was a weapon in it or something else in that regard.

Q.      And what did you find?

A.      I found a crack pipe.

Q.      And where was that located at?

A.      To the best of my recollection, it was  - - there's a little area between the seat and the middle hump next to the console.

Q.      And was that the area where the  - - where you saw what could be described as furtive movements?

A.      Yes, it was.

Q.    Did you do any type of search of the rest of the vehicle?

A.    No, I did not.  I looked where he had reached.  That's all.

Q.    And you said it was a crack pipe?

A.    Yes, sir.

Q.    And how did you know it was a crack pipe?

A.    I field tested it later.

Q.    It was positive for cocaine?

A.    Yes, sir.

Q.    Based on your training and experience, did it look how a crack pipe would look?

A.    Absolutely.  It was consistent with what my experience told me a crack pipe looks like.

Q.    Did you do anything else that evening?

A.    I arrested Mr. Smith and took him to Central Booking.

(Doc. 79, Ex. A, pp. 5-11).

The CCP issued an Order on January 11, 2008, regarding the suppression hearing, and held as follows:

In order to search the vehicle, there would have to be exigent circumstances which require the officer not to get a warrant.

I do not find that exigent circumstances exist.  I believe the Defendant when he says there were other officers there, and the police officer has not really denied that, although he does not specifically remember it, but I believe it was quite likely there would have been, and, therefore, one of those other officers could have stayed there while they obtain a warrant.

Even if there was not another officer there, I do not find proof that anybody knew where this vehicle was, that they could have come and got it.

Obviously, the Defendant did not know and would have been unable to communicate to somebody how to come and get it, and the only person that potentially would have been his mother, who did not find out until after the vehicle had been searched, and at some significant point later in time when, on the way to Central Booking, so there is exigent circumstances and the search of the vehicle was improper and the marijuana and pipe would be suppressed.

The next contention is does the Plain Field Doctrine apply and should the officer be permitted to pull out the bag of marijuana because he knew exactly what it was and, in effect, it was the same as if it was in plain sight.

You start that observation with the fact that the police officer, once he does not feel something hard, is deemed to be aware that there is no weapon and basically must stop. He cannot continue to feel to determine what the something soft is, so to speak, so when he felt something soft and then closed his hand around it, he went beyond what he was permitted to do legally when he says that he determined it was marijuana.

My finding is that while he could determine it was something soft, and maybe it even was a leafy substance, it would be impossible to determine, in fact, it was marijuana just on that limited feel. And I understand that he would have a hunch that it is marijuana. In his mind it was beyond the hunch. It was extremely likely, but there is no way possible that anyone can feel a soft substance like that and know in advance it is marijuana, even while recognizing how likely it is that it would be marijuana.

Therefore, it was not permissible for him to "find" the marijuana and the marijuana should be suppressed on that basis.

The Court also finds that the approach of the vehicle and having the Defendant get out of the vehicle and be subjected to a pat-down search itself was improper. There were no circumstances that would tell the officer that it was likely that there was danger, that there was something about t his situation that he should suspect there might be a weapon and that he needed to search for weapons.

This is not a high drug area, despite the fact that it may be a desolate area where people sometimes come to deal drugs, and by what he says, certainly this was not someplace you would call a high drug area and people are obviously there for various other reasons, including dumping and what other activities may occur in isolation.

But there is simply nothing about this situation which would give him reason to believe that he was in danger in that a weapon was likely present and that he needed to search the vehicle. There is no indication here that a crime was being committed. There is no indication that the car was illegally parked.

The fact that one observes furtive movements alone is not sufficient. We note that given the visibility, in the sense of being blocked by the back of the seat, he is only seeing very limited motion.

We understand that his intuition as a police officer tells him what that motion likely is, and we fully understand why acting on that intuition he reasonably had all likelihood that that is what it was, but that is not a legal basis to do what he did.

He cannot do it on a hunch. It has to be something that establishes without question the likelihood of danger to him, which these facts simply do not.

So he had no right to ask the Defendant to get out of the car and he had no right to do a search for weapons and he had no right to "find" the drugs after he determined they were not weapons and he had no right to search the vehicle. Therefore, all of the evidence in the case is hereby suppressed.

We do this without noting any criticism of the police officer, who we believe proceeded in good faith and in accurate observation of the likelihood of what he observed being what he thought it was, as it proved out to be, but we simply do not believe as a matter of law that permits him to make the searches that he made.

(Doc. 79, Ex. G, pp. 2-4).

On January 14, 2008, the CCP issued an Order and granted Plaintiff's habeas corpus motion, and dismissed the charges filed against him by Defendants. (Doc. 79, Ex. G, p. 6).[8]

_____

[8] Defendants' Ex. G is the same as Plaintiff's Exs. A and B attached to his SMF, Doc. 75.

18

Thus, it is undisputed that Plaintiff prevailed in the CCP with respect to his suppression motion and habeas corpus motion, and that the CCP dismissed the criminal charges Defendants filed against him regarding the June 4, 2007 incident.

## III. Motion for Summary Judgment Standard.

In *Allen v. Fletcher*, 2009 WL 1542767, *2 (M.D. Pa.), the Court outlined the applicable standard to apply when considering a summary judgment motion as follows:

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has

satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson,* 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

## IV. Discussion.

As mentioned, the Court has allowed Plaintiff to proceed with respect to his false arrest claims against Defendants Hanuska and Bixler, and his illegal search and seizure claim against Defendant Hanuska relating to the June 4, 2007 incident. Plaintiff's claims are brought under the Fourth Amendment. Plaintiff has filed his civil rights action pursuant to §1983.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273,

284-85 (2002).[9]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.;  Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

As his main argument in his Summary Judgment Motions and support Briefs, Plaintiff Smith basically contends that since he undisputedly prevailed against Defendants at his suppression hearing in his state court criminal case, *Com. of PA v. Smith*, No. CP-67-0005087-2007, York County Court of Common Pleas,  regarding the charges Defendants filed against him and since the state court ruled in his favor in his criminal case and dismissed the charges, Defendants are now precluded from arguing that they did not violate his Fourth Amendment rights with respect to his instant § 1983 civil rights action.  Specifically, Plaintiff maintains that he is entitled to Summary Judgment  with respect to his false arrest claims against Defendants Hanuska and Bixler, and his illegal search and seizure claim against Defendant Hanuska relating to the June 4, 2007 incident since the state court, at his January 9, 2008 suppression hearing, dismissed the criminal charges

---

[9]There is no dispute that both Defendants are state agents.

Defendants filed against him and "ruled that an illegal search and seizure of [Plaintiff] and his vehicle occurred." (Doc. 73, p. 1). Plaintiff points to his evidence which undisputedly shows that on January 14, 2008, the state court issued an Order and granted his habeas corpus motion and dismissed the criminal charge Defendants filed against him. (Doc. 75, Exs. A and B). Plaintiff states that there are no facts in dispute regarding the illegal search and seizure by Defendant Hanuska on June 4, 2007, and regarding the dismissal of the criminal drug charges Defendants filed against him based on "the illegal conduct of the arresting officer." (Doc. 73, p. 1). Plaintiff argues that "Defendant Hanuska should be precluded from relitigating issues concerning the legality of the stop, search and seizure based upon collateral estoppel." (*Id*., pp. 1-2). He also argues that Defendant Bixler did not issue the June 24, 2007 Criminal Complaint against him based on probable cause. Rather, he contends that Defendant Bixler issued the Criminal Complaint "upon a parole officer's request." (*Id*., p. 2). Plaintiff refers to the Supplemental Summary attached to the Police Incident Investigation Report which provided as follows:

> **Supplemental Summary**
> SUPPLEMENTAL 06/24/2007 14:02    #42 DET DAVID BIXLER
> State Parole Agent Brian Shaffer contacted this officer [Defendant Bixler] and wanted to know if the charges had been filed against Stewart Smith. Upon checking with Officer Hanuska his wife called back and stated that he was in Canada fishing. T/O then filed the charges to hold Smith for parole and took them to central booking.

(Doc. 79, Ex. C, p. 4).

Thus, Plaintiff summarizes his arguments in support of his pending Summary Judgment Motions as follows:

2. Collateral estoppel prevents any relitigation of issues already ruled on.

3. There [is] no dispute that plaintiff was illegally seized and that this issue was decided upon in plaintiff's criminal case from which this suit stems.

4. There's no dispute that defendant Hanuska illegally seized plaintiff.

5. There's no dispute that defendant Hanuska falsely arrested plaintiff as an illegal seizure occurred thereby causing an arrest of plaintiff's right to be free from illegal searches and seizures.

6. There's no dispute that defendant Bixler falsely arrested plaintiff as the record clearly establishes plaintiff was arrested a second time June 24th 2007 for the same charges as that of June 4th 2007, without probable cause to do so, based solely upon a parole agent's request, even when plaintiff was already in custody of parole.

7. The records of plaintiff's criminal case substantiates (sic) all facts in complaint relating to these claims and summary judgement should therefore be granted.

(Doc. 45, pp. 1-2).

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's false arrest claims against them, and that Plaintiff's arrest without a warrant was reasonable under the Fourth Amendment since there was probable cause on June 4, 2007, to believe that Plaintiff was committing a criminal offense. Defendants state that "there was probable cause to arrest Plaintiff for the drug violations because there was marijuana found on his person and drug paraphernalia found in his vehicle." (Doc. 76, p. 6). Defendants also state that there is no evidence Detective Bixler ever arrested Plaintiff.

Defendants also argue that Officer Hanuska is entitled to summary judgment with respect to the Plaintiff's Fourth Amendment illegal search and seizure claim since he had probable cause to conduct the warrantless search on June 4, 2007, as well as the stop under *Terry v. Ohio*, 392 U.S. 1 (1968). Defendants further contend that Officer Hanuska "had reasonable suspicion that criminal activity may be afoot to conduct the investigatory stop based upon the location of the incident, time of day, and Plaintiff's actions prior to Hanuska approaching the car." (*Id.*, p. 7). Additionally, Defendants maintain that "Defendant Hanuska then had probable cause to search Plaintiff's vehicle after he found the drugs on Plaintiff's person and exigent circumstances existed to conduct the search incident to the arrest." (*Id.*, p. 8).

Thus, Defendants contend that regardless of the fact that Plaintiff succeeded in the CCP and the state court granted his suppression/habeas motion and dismissed the drug charges, they are still entitled to summary judgment with respect to Plaintiff's Fourth Amendment claims brought under §1983 since there was sufficient probable cause and reasonable suspicion that Plaintiff was engaged in criminal activity on June 4, 2007.

Plaintiff argues that since he prevailed at the suppression hearing in his state court criminal case, since the state court "already determined that an illegal search and seizure occurred," and since the state court dismissed the criminal drug charges against him, this entitles him to summary judgment against Defendants in the instant § 1983 civil rights action. Plaintiff also states that the state court's decision in his criminal case constitutes a final determination on the merits of his present constitutional claims based on *res judicata* and collateral estoppel. Thus, Plaintiff asserts that he is entitled to judgment against Defendants since the state court ruled in his favor and

24

dismissed the criminal charges against him based on the Fourth Amendment. Plaintiff maintains that the state court's undisputed finding in his state criminal case is determinative of the merits of his present constitutional claims in this § 1983 civil rights action which arise from the same incident as his state criminal case.

In *Briggs v. Godby*, 2009 WL 4756390, *5-*6 (E.D. Pa.), the Court stated:

> "The federal courts have traditionally adhered to the related doctrines of *res judicata* and collateral estoppel." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Under collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* Whether in federal or state courts, "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.; Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp.,* 688 F.2d 166, 174 (3d Cir.1982). The United States Supreme Court has specifically recognized that collateral estoppel applies broadly to section 1983 claims. *Allen,* 449 U.S. at 102-03; *see also Ingram v. Lupas,* No. CIV.A.09-1688, 2009 WL 4048786, at *2 (3d Cir. Nov.24, 2009) (noting that "[i]t is well established that principles of collateral estoppel are fully applicable to civil rights actions brought under § 1983.").
> Well-settled jurisprudence provides that application of collateral estoppel has four essential elements: "(1) an issue decided in a prior action is identical to the one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." *Jones v. U.S. Parcel Serv.,* 214 F.3d 402, 405-06 (3d Cir.2000). The Third Circuit has found these elements satisfied and thus estopped an individual from litigating Fourth Amendment claims where the same issues were previously litigated in a prior criminal proceeding. *James v. Heritage Valley Fed. Credit Union,* 197 Fed. App'x 102, 105 (3d Cir.2006) ("[a] finding in a prior criminal proceeding may estop an individual from litigating the same issue in a subsequent civil proceeding."), *cert. denied,* 550 U.S. 939, 127 S.Ct. 2253, 167 L.Ed.2d 1098 (2007). Federal courts within this Circuit have repeatedly made similar findings. *See, e.g., Crawford v. Frimel,* No. CIV.A.07-3452, 2009 WL 1904613, at *2 (3d Cir. Jul. 2, 2009) (prior

determination of probable cause issue during suppression hearing in criminal proceedings barred subsequent civil suit raising the probable cause issue); *Berry v. Chaves,* No. CIV.A.02-893, 2003 WL 21497557, at *1-2 (E.D.Pa. Jun.30, 2003) (holding that plaintiff's section 1983 claim that searches of his residence and car were unconstitutional were barred because the constitutionality of those actions were fully considered and upheld during a suppression motion in plaintiff's underlying federal criminal proceedings); *see also Doswell v. City of Pittsburgh,* No. CIV.A.07-0761, 2009 WL 1734199, at *6 (W.D.Pa. Jun.16, 2009) (finding that collateral estoppel barred plaintiff's section 1983 claim for malicious prosecution based on an unduly suggestive photo array where, during his criminal trial, the state court considered and denied a motion to suppress that photo array); *Ashford v. Skiles,* 837 F.Supp. 108, 112 (E.D.Pa.1993) (holding that a finding of probable cause made in a state court criminal suppression hearing, which afforded the parties a full and fair opportunity to litigate the issue, may be an "appropriate basis" for application of collateral estoppel to a section 1983 claim).

Thus, in *Briggs*, the Court found that since the merits of its Plaintiff's Fourth Amendment search and seizure claims he filed in a §1983 civil rights suit were already fully litigated in his federal criminal case and since Briggs was not successful in his criminal case regarding his Fourth Amendment claims, Briggs was collaterally estopped from re-asserting his Fourth Amendment claims in a § 1983 civil rights action. The *Briggs* Court found that "the Fourth Amendment issue meets all of the necessary criteria for application of collateral estoppel." *Id*. at * 6. The *Briggs* Court considered the facts alleged by Plaintiff in his civil rights complaint and the facts of Plaintiff's underlying criminal proceedings, including the basis of his suppression motion.

Plaintiff Smith argues the state court's determination that an illegal search and seizure occurred in his state criminal case has a *res judicata* effect on his §1983 civil rights action claiming Fourth Amendment violations by Defendant police officers, and he argues that Defendants are now collaterally estopped from contesting the merits of his Fourth Amendment claims. Plaintiff also

contends that the doctrine of *res judicata* entitles him to judgment on the merits with respect to his present Fourth Amendment claims against Defendants.

In order for *res judicata* to apply, one factor is that Plaintiff's instant Fourth Amendment claims are based on his state court claims he raised in his suppression motion he filed in his criminal case. *See James v. Heritage Valley Federal Credit Union*, 197 Fed. Appx. 102, 105 (3d Cir. 2006). For collateral estoppel, or issue preclusion, to apply, under Pennsylvania law, the following elements are required:

> (1) the issue decided in the prior adjudication was identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in a prior action.

*Id*. (citation omitted).[10]

In the present case, we do not find that Plaintiff Smith's Fourth Amendment claims meet all of above stated required criteria for application of *res judicata* and collateral estoppel. Plaintiff

---

[10]In *James*, the Court found as follows:

James raised and argued in the trial court that the evidence should be suppressed because the searches and seizures at issue presently were constitutionally invalid. The trial court ruled on the challenges and found no Fourth Amendment violations. James also was party to the litigation and was represented by counsel. He also had the opportunity to raise the issue on appeal, but failed to receive relief. *See Dixon v. Richer,* 922 F.2d 1456, 1459 (10th Cir. 1991) (holding that the ability to appeal an adverse ruling is indispensable to a finding that there existed a full opportunity to litigate the issue). Accordingly, the issue of whether James' Fourth Amendment rights were violated is precluded.

197 Fed. Appx. at 106.

Smith seeks to have the Court apply these principles in his § 1983 action in order to find that his Fourth Amendment rights were violated by Defendants. We find that the issues decided by the CCP with respect to Plaintiff 's suppression motion and habeas motion are not identical to the issues presented in the instant action. As stated below, probable cause to support an arrest does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). Thus, simply because the CCP found that Defendant Hanuska's search of Plaintiff's vehicle on June 4, 2007, was not proper and suppressed the evidence Hanuska found and dismissed the drug charges, does not necessarily show that Defendant Hanuska lacked probable cause to arrest Plaintiff and that Defendant Bixler lacked probable cause to issue the criminal complaint against Plaintiff.

To succeed on a false arrest claim under § 1983, the Court in *Kokinda v. Breiner,* 557 F. Supp. 2d 581, 592 (M.D. Pa.)*,* stated:

> A claim under § 1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures. *Garcia v. County of Bucks,* 155 F.Supp.2d 259, 265 (E.D.Pa.2001) (citing *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995)). To maintain his false arrest claims, "a plaintiff must show that the arresting officer lacked probable cause to make the arrest." *Id.* "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." *Id.*

> "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995). However, unlike a malicious prosecution claim, for which each criminal charge is analyzed independently, a false arrest claim will fail if there was probable cause to arrest for at least one of the offenses involved. *Johnson,* 477 F.3d at 75; *see also Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir.1994) (holding that for an arrest to be justified, "[p]robable cause need only exist as to any offense that could be charged under the circumstances").

*See also Cummings v. City of Phila.*, 137 Fed. Appx. 504, 506 (3d Cir. 2005).

In *Irick v. City of Phila.*, 2008 WL 2120171, *8 (E. D. Pa.), the Court stated:

> An arrest may violate the standards of the Fourth Amendment if it is made without probable cause to believe that a crime has been committed. *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir.1994). Thus, the proper inquiry in a Section 1983 claim based on false arrest is "'whether the arresting officers had probable cause to believe the person arrested had committed the offense.'" *Groman v. Township of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995). If the arresting officer lacked probable cause to make the arrest, the arrestee also has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Id.* at 636 (*citing Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir.1988)).
>
> Typically, the existence of probable cause in a § 1983 action is a question of fact. *Wilson v. Russo,* 212 F.3d 781, 796 (3d Cir.2000) (*citing Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir.1997)); *Groman,* 47 F.3d at 635. A court, however, can conclude that probable cause did not exist as a matter of law if the evidence viewed in the light most favorable to the non-moving party would not reasonably support a finding of probable cause. *See Sherwood,* 113 F.3d at 401. It is the Court's role to determine whether the objective facts available to the police officer at the time of the arrest would justify a reasonable belief that an offense was being committed. *Victory Outreach Ctr. v. Melso,* 313 F.Supp.2d 481, 488 (E.D.Pa.2004) (*citing Johnson v. Campbell,* 332 F.3d 199, 211 (3d Cir.2003)). Thus, the Court must examine whether any facts in the record reasonably support a finding of a lack of probable cause.
>
> "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir.2000) (*citing Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir.1995). [FN2]  Thus, the probable cause standard does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime." *Radich v. Goode,* 886 F.2d 1391, 1397 (3d Cir.1989); *see also Barna,* 42 F.3d at 819 ("The test for an arrest without probable cause is an objective one, based on the facts available to the officers at the moment of arrest."). The good faith or bad faith of the arresting officer is entirely irrelevant. *Whren v. United States,* 517 U.S. 529, 531 (1998).

FN2. "The validity of an arrest is determined by the law of the state where the arrest occurred." *United States v. Myers,* 308 F.3d 251, 255).

In *Reedy v. Evanson*, 615 F. 3d 197, 211 (3d Cir. 2010), the Third Circuit stated that "[i]t is well-established that the Fourth Amendment 'prohibits a police officer from arresting a citizen except upon probable cause.'" (citations omitted). The *Reedy* Court also stated:

> Probable cause "requires more than mere suspicion [.]" *Orsatti,* 71 F.3d at 482. However, it does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams,* 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Rather, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti,* 71 F.3d at 483; *see also Wilson v. Russo,* 212 F.3d 781, 789 (3d Cir.2000) ("Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." (citation omitted).). "Probable cause need only exist as to [one of the] offense[s] that could be charged under the circumstances." *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir.1994). In analyzing whether probable cause existed for an arrest, we must take a "totality-of-the-circumstances approach." *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Initially, we disagree with Plaintiff that he was arrested twice on the same drug charges, once by Defendant Hanuska on June 4, 2007, without a warrant and once by Defendant Bixler on June 24, 2007, when Bixler issued the Criminal Complaint and Affidavit of Probable Cause. As Defendants state, there is no evidence that Defendant Bixler arrested Plaintiff at any time despite the fact that he issued the Criminal Complaint and Affidavit of Probable Cause against Plaintiff on June 24, 2007. Plaintiff is correct in that there is no dispute that Defendant Hanuska arrested him without a warrant on June 4, 2007.

Defendant Hanuska testified at the suppression hearing regarding the June 4, 2007 incident that he arrested Plaintiff and took him to Central Booking. (Doc. 79, Ex. A, p. 10). However, we agree with Defendants (Doc. 76, p. 6, ¶ 32.) that it is undisputed Plaintiff was only prosecuted once for the drug charges arising from the June 4, 2007 incident with Defendant Hanuska. Plaintiff essentially conceded this during his deposition. Plaintiff admitted that after Defendant Hanuska arrested him on June 4, 2007, without a warrant, police officers took him to Central Booking and he was processed, *i.e.* fingerprinted, photographed and explained the charges against him. At Central Booking, Plaintiff told the police that he was on parole. Plaintiff stated that the police contacted the parole office and the parole decided not issue a detainer against him, *i.e.*, on June 4, 2007. Plaintiff stated that when he left Central Booking he had not yet been given a summons or any paperwork with the drug charges. Plaintiff stated that before he left Central Booking, he was told that a summons with the drug charges would be sent to him in the mail. (Doc. 79, Ex. D, pp. 6-10). Also, Plaintiff stated that he did not ever receive any summons in the mail with the drug charges from June 4, 2007 through June 24, 2007. (*Id.*).

On June 24, 2007, Pennsylvania State Parole Agent Shaffer contacted Defendant Bixler to see if the drug charges were ever filed against Plaintiff regarding the June 4, 2007 incident. Defendant Bixler tried to check with Defendant Hanuska and he was advised that Hanuska was in Canada fishing. Thus, Defendant Bixler issued the Criminal Complaint and Affidavit of Probable Cause against Plaintiff on June 24, 2007, charging Plaintiff with two drug violations in one count under PA Title 35 §780-113(a)(31) and (32) regarding the June 4, 2007 incident with Defendant Hanuska. (Doc. 79, Exs. B and C). In his Affidavit of Probable Cause, Defendant Bixler stated that

based on the facts of the June 4, 2007 arrest of Plaintiff by Defendant Hanuska, he was requesting that warrant be issued charging Plaintiff with one count under PA Title 35 §780-113(a)(31) and (32). (Doc. 79, Ex. B, p. 4).

It appears that Defendant Bixler issued the Criminal Complaint against Plaintiff dated June 24, 2007, after the Pennsylvania Parole Officer issued a parole warrant for Plaintiff and Plaintiff was already in the custody of the Pennsylvania Parole Board. (*See* Doc. 45, ¶ 6.).

Plaintiff also testified at his deposition that a couple weeks after his release from Central Booking on June 4, 2007, he was stopped by an unknown regional police officer for making an illegal left turn on George Street in York, Pennsylvania. The officer told Plaintiff that he had to take Plaintiff to Central Booking since there was a parole warrant for Plaintiff. (Doc. 79, Ex. D, pp. 9-10). Thus, we find that Defendant Bixler never arrested Plaintiff.

With respect to Defendant Bixler, there is one claim against him for false arrest under the Fourth Amendment. Plaintiff argues that Defendant Bixler falsely arrested him a second time on June 24, 2007, on the same charges "as that of June 4, 2007, without probable cause to do so, based solely upon a parole agents (sic) request, even when Plaintiff was already in custody of parole." (Doc. 45, pp. 1-2).

As stated, we find that the record shows that Defendant Bixler requested the issuance of an arrest warrant for Plaintiff based on his June 24, 2007 Affidavit of Probable Cause. (Doc. 79, Ex. B, p. 4). However, as stated, we find that Defendant Bixler did not arrest Plaintiff at any time. We also find that Defendant Bixler had probable cause to issue the Criminal Complaint and Affidavit of Probable Cause against Plaintiff on June 24, 2007.

In *Reedy*, the Court stated:

> An arrest warrant "does not, in itself, shelter an officer from liability for false arrest." *Wilson,* 212 F.3d at 786. Instead,
>
>> a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause.
>
> *Id.* at 786-87 (internal quotations omitted). Thus, a court faced with a claim that an arrest warrant contains false assertions and omissions must first determine whether the officer made those false assertions or omissions either deliberately or with reckless disregard for their truth.

615 F. 3d at 213.

The *Reedy* Court further stated:

> Whether something is done deliberately is a straightforward question of fact. To know whether something is done with "reckless disregard" for the truth requires some explanation of the meaning of that term. Assertions are made with reckless disregard when, "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious rea (internal quotations omitted). Assertions can be made with reckless disregard for the truth "even if they involve minor details-recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." *Id.* "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know" in making a probable cause determination. *Id.* at 783.
> After establishing that "there [is] sufficient evidence of omissions and assertions made knowingly, or with reckless disregard for the truth," a court "assess[es] whether the statements and omissions made with reckless disregard of the truth were material, or necessary, to the finding of probable cause." *Id.* at 789 (internal quotations omitted). "To determine the materiality of the misstatements and omissions," a court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether ... the 'corrected' ... affidavit would establish probable cause." *Id.*

*Id.*

Based on the undisputed record, we find that Plaintiff has failed to produce "sufficient evidence that a reasonable jury could conclude that [Defendant Bixler] made statements or omissions [in his Affidavit of Probable Cause] that he 'knew [were] false, or would have known [were] false except for his reckless disregard for the truth.'" *Id*. at 214, n. 24 (citations omitted). The *Reedy* Court noted that a person challenging an affidavit was required to show, by a preponderance of the evidence, as follows:

> "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson,* 212 F.3d at 786-87 (internal quotations omitted).

*Id*.

As Defendants point out (Doc. 77, p. 8), "to the extent that Plaintiff argues that the suppression of the evidence in his criminal proceeding supports his claim that probable cause did not exist, it is well settled that the exclusionary rule is not applicable in a §1983 action." Defendants cite to *Padilla v. Miller*, 143 F. Supp. 2d 479, 491 (M.D. Pa. 2001). In *Padilla*, the Court stated:

> Indeed, the courts that have addressed the issue have uniformly concluded that the exclusionary rule is not applicable in a § 1983 action. *See e.g., Townes,* 176 F.3d at 145 ("the fruit of the poisonous tree doctrine cannot link the unreasonable seizure and search to Townes' conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions"); *Wren v. Towe,* 130 F.3d 1154, 1158 (5th Cir.1997), *cert. denied,* 525 U.S. 815, 119 S.Ct. 51, 142 L.Ed.2d 40 (1998). ("Exclusion of the evidence found by [the police] on the theory that they had no legal right to search the vehicle would, in effect, be an application of the exclusionary rule to this case. Such an application would be inappropriate. The Supreme Court has never applied the exclusionary rule to civil cases, state or federal." *Jonas v. City of Atlanta,* 647 F.2d 580, 588 (5th Cir.1981) ( "[T]he desired deterrent effect has been achieved by the suppression of evidence [obtained as a result of an illegal

34

search and seizure] in state criminal proceedings. The criminal enforcement process, which is the concern and duty of defendants, has been thwarted. Given the deterrence obtained by, in effect, precluding criminal prosecution, we think that the additional marginal deterrence provided in this case by disallowing the use of the evidence at this civil trial would not outweigh the societal cost of excluding relevant evidence and decreasing the possibility of obtaining accurate factual findings."); *Mejia v. City of New York,* 119 F.Supp.2d 232, 254 n. 27 (E.D.N.Y.2000)." The three subsequently seized portfolios are admissible in this action as evidence of probable cause, despite the fact that they were suppressed during Mr. Mejia's criminal trial, because the Fourth Amendment's exclusionary rule does not apply in civil actions, other than civil forfeiture proceedings."). Thus, under traditional common law principles, Padilla would not be entitled to recover damages for that period of time between his arrest and arraignment because his detention was then supported by probable cause.

*See also Cox v. Pate,* 2007 WL 654317, *3 (W.D. Pa. 2-27-07)("the law is clear that the unlawful search did not vitiate the probable cause to arrest and detain the Plaintiffs.").

We agree with Defendants that probable cause existed to arrest Plaintiff on June 4, 2007, by Hanuska *via* his warrantless arrest based on the totality of the circumstances for purposes of Plaintiff's present claim under § 1983. We also find that Defendant Bixler had probable cause to issue the Criminal Complaint and Affidavit of Probable Cause against Plaintiff on June 24, 2007.

As discussed above, Defendant Bixler's Affidavit of Probable Cause was clearly consistent with Defendant Hanuska's testimony at the suppression hearing regarding the June 4, 2007 incident with Plaintiff. (Doc. 79, Ex. A). Defendant Bixler's Affidavit of Probable Cause was also consistent with Defendant Hanuska's Incident Investigation Report. (Doc. 79, Ex. C, p. 3). We find that Plaintiff has not offered any evidence to show that Defendant Bixler knowingly and deliberately, or with a reckless disregard for the truth, made any false statements or omissions in his Affidavit of Probable Cause that created a falsehood in applying for a warrant charging Plaintiff with one drug count under PA Title 35 §780-113(a)(31) and (32). Also, based on the stated record, we do not find

that Defendant Bixler's June 24, 2007 Affidavit of Probable Cause was issued based only upon a parole agent's request as Plaintiff contends. Additionally, as Defendants state (Doc. 86, p. 11), "there are no facts of record that Bixler actually arrested Plaintiff at any time."

Thus, we will recommend that the Court grant Defendants' Summary Judgment Motion and deny Plaintiff's Summary Judgment Motions with respect to Plaintiff's false arrest claim against Defendant Bixler.

Moreover, Plaintiff also has asserted a false arrest claim against Defendant Hanuska. As stated, it is undisputed that Defendant Hanuska arrested Plaintiff without a warrant on June 4, 2007, that he took Plaintiff into custody and, that he brought Plaintiff to Central Booking, where Plaintiff was processed. No criminal charges were issued against Plaintiff at that time. Rather, upon his release from Central Booking, Plaintiff was told that he would be mailed a summons with the drug charges. However, Plaintiff testified that between June 4, 2007 and June 24, 2007, he never received a summons with the drug charges in the mail. On June 24, 2007, Defendant Bixler issued a Criminal Complaint charging Plaintiff with one count of drug violations based entirely on the June 4, 2007 incident with Defendant Hanuska and Bixler issued an Affidavit of Probable Cause seeking an arrest warrant for Plaintiff.

With respect to Plaintiff's false arrest claim against Defendant Hanuska, we agree with Defendants (Doc. 77, p. 7) and find that based on Defendant Hanuska's testimony at the suppression hearing regarding the June 4, 2007 incident with Plaintiff (Doc. 79, Ex. A), as well as Defendant Hanuska's Incident Investigation Report (Doc. 79, Ex. C), the undisputed evidence shows that Hanuska had probable cause to believe Plaintiff had committed the drug offenses of

possession of a small amount of marijuana and possession of drug paraphernalia, *i.e.* a crack pipe. Defendant Hanuska testified that on June 4, 2007, he pulled behind Plaintiff's vehicle for a spot check to find out if the driver needed help. Defendant Hanuska stated that as he opened his car door, he saw Plaintiff through the rear window of Plaintiff's car spin around, look at him, and then reach in between the front seats seemingly in an attempt to hide something. Defendant Hanuska then told Plaintiff to get out of his car and, he handcuffed Plaintiff and patted him down looking for weapons due to the "furtive" movements Defendant Hanuska observed Plaintiff making. The evidence shows that Defendant Hanuska removed a sandwich bag from Plaintiff's front pocket during his pat down search which he believed, based on his experience and training, contained marijuana. The evidence also shows that the sandwich bag did in fact contain 3 grams of marijuana. (Doc. 79, Ex. E). Defendant Hanuska also went back to Plaintiff's car due to his suspicions about his observation of Plaintiff stuffing something between his car seats, and he found that Plaintiff had put a crack pipe between the seats in his car.

We find that the evidence is undisputed that the objective facts available to Defendant Hanuska at the time of his June 4, 2007 arrest of Plaintiff justified a reasonable belief that an offense was being committed by Plaintiff. Further, we find the facts in the record are undisputed that Defendant Hanuska's observations would reasonably support a finding that he had probable cause to arrest Plaintiff. Moreover, as discussed, the Magisterial District Judge found that Defendant Hanuska had established a *prima facie* case against Plaintiff at the preliminary hearing and bound over the drug charges against Plaintiff to the CCP.

As Defendants point out, since the charges against Plaintiff were bound over for court and trial, after a preliminary hearing before a Pennsylvania magisterial district judge, despite the subsequent dismissal of the charges by the CCP, there was some initial independent judicial finding that probable cause existed with respect to Defendant Hanuska's arrest of Plaintiff on the drug charges and with respect to the Criminal Complaint Defendant Bixler filed against Plaintiff. "The purpose of a preliminary hearing [in Pennsylvania] is to avoid the incarceration or trial of a Defendant unless there is sufficient evidence to establish a crime was committed and the probability the Defendant could be connected with the crime." *Com. v. Tyler*, 587 A.2d 326 (Pa. Super. 1991).

The independent judicial determination, of which there is no dispute, found that there was a sufficient showing by Defendant Hanuska of a *prima facie* case against Plaintiff with respect to the drug charges, and that there was a factual and legal basis for Plaintiff's arrest as a result of the June 4, 2007 incident since the charges were bound over to court for trial. A *prima facie* case is when the evidence read in a light most favorable to the Commonwealth, "sufficiently established both the commission of a crime and that the accused is probably the perpetrator of that crime." *Com. v. Hendricks*, –A. 2d —, 2007 WL 1732578 (Pa. Super. 2007). As discussed, we find that the record shows that Defendant Hanuska had sufficient probable cause that Plaintiff committed the drug offenses, and the magisterial district judge found that there was sufficient evidence to allow the charges to go to the jury.

As the Court in *Kokinda*, 557 F. Supp. 2d at 593, stated, based on *Virginia v. Moore*, ___U.S.___, 128 S. Ct. 1598, 1607-08 (2008), "[w]hen officers have probable cause to believe that

a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest."

We find that Defendants' evidence is enough to show that no material facts are in dispute as to whether Defendant Hanuska had facts and circumstances within in his knowledge on June 4, 2007, to warrant a reasonable person to believe that Plaintiff committed drug offenses. We agree with Defendants that it is not important with respect to Plaintiff's Fourth Amendment false arrest claim that the CCP dismissed the drug charges. As the *Irick* Court stated, in quoting the Third Circuit Court of Appeals, "the probable cause standard does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime." 2008 WL 2120171, *8 (citations omitted). Therefore, we agree with Defendants that the facts in the record, detailed above, reasonably support a finding that Defendant Hanuska had probable cause to arrest Plaintiff and that Defendant Hanuska had a reasonable belief that Plaintiff committed a crime on June 4, 2007.

Thus, we will recommend that the Court grant Defendants' Summary Judgment Motion and deny Plaintiff's Summary Judgment Motions with respect to Plaintiff's false arrest claim against Defendant Hanuska.

Plaintiff also has an illegal search and seizure claim against Defendant Hanuska brought under the Fourth Amendment. Plaintiff argues he is entitled to summary judgment with respect to his Fourth Amendment illegal search and seizure claim against Defendant Hanuska in his §1983 action based on the exclusionary rule since he prevailed with his suppression motion in his criminal case in state court and the drug charges were dismissed.

As discussed, the CCP granted Plaintiff's motion to suppress the evidence concerning the marijuana and crack pipe that Defendant Hanuska found during his search of Plaintiff and Plaintiff's car on June 4, 2007. The CCP found that Defendant Hanuska did not have probable cause to approach Plaintiff 's car, to order Plaintiff to get out of his, and to conduct a pat-down search of Plaintiff. (Doc. 79, Ex. G).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ... ." U.S. Const. Amend. IV.

To support his illegal search and seizure claim against Defendant Hanuska, Plaintiff must show that the actions of Defendant constituted a "search and seizure" under the Fourth Amendment and that the search and seizure was "unreasonable." *See Manolovich v. Park*, 2010 WL 4366265, *7 (W.D. Pa. 10-28-10). We find that the evidence shows Defendant Hanuska conducted, under the Fourth Amendment, a warrantless search of Plaintiff and Plaintiff's vehicle, and that Hanuska seized marijuana and a crack pipe on June 4, 2007. Defendants argue that the warrantless search was reasonable since Defendant Hanuska had probable cause to conduct it.

In *Manolovich*, the Court stated:

The Court of Appeals for the Third Circuit has stated the following:

The fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search. If the search is reasonable, there is no constitutional problem, for the Fourth Amendment only protects individuals from unreasonable searches and seizures. Determining whether a search is reasonable depends on all the circumstances surrounding the search or seizure and the nature of the search or seizure itself, and involves balancing on the one hand, the degree to which [the search] intrudes

> upon an individual's privacy and, on the other hand, the degree to which [the search] is needed for the promotion of legitimate government interests.

*United States v. Sczubelek,* 402 F.3d 175, 182 (3d Cir.2005) (citations and quotation marks omitted).

We find that the evidence, thoroughly detailed above, is disputed as to whether a reasonable fact finder could determine that Defendant Hanuska's conduct on June 4, 2007, violated Plaintiff's Fourth Amendment rights protecting him against unreasonable searches and seizures. We find that there are disputed facts as to whether exigent circumstances existed based on where Plaintiff's vehicle was located and based on Plaintiff's movement in his car, described like he was trying to hide something, which would have excused Defendant Hanuska from obtaining a search warrant. Also, Defendant Hanuska did not conduct the pat down search of Plaintiff and find the marijuana in Plaintiff's pocket until after he approached Plaintiff's vehicle and told Plaintiff to exit it. We find that it is disputed as to whether a reasonable fact finder would determine that Defendant Hanuska's stated conduct in approaching Plaintiff's vehcile in the first place violated Plaintiff's Fourth Amendment rights against unreasonable searches and seizures.

Thus, we will recommend that the Court deny Defendants' Summary Judgment Motion and deny Plaintiff's Summary Judgment Motions with respect to Plaintiff's illegal search and seizure claim against Defendant Hanuska, and that the Court set this claim for trial.

## IV. Recommendation.

Based on the foregoing, it is respectfully recommended that the Court grant Defendants' Summary Judgment Motion **(Doc. 76)** and deny Plaintiff's Summary Judgment Motions **(Docs. 41, 61 and 73)** with respect to Plaintiff's false arrest claims against Defendant Bixler and Defendant

Hanuska.   It is recommended that the Court enter Judgment in favor of both Defendants and against Plaintiff with respect to Plaintiff's false arrest claims.   It is further recommended that the Court deny Defendants' Summary Judgment Motion and deny Plaintiff's Summary Judgment Motions with respect to Plaintiff's illegal search and seizure claim against Defendant Hanuska, and that the Court set this claim for trial.


                              **s/ Thomas M. Blewitt**
                              **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**

**Dated: February 3, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEWART C. SMITH, | : | CIVIL ACTION NO. **1:CV-09-0889** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| OFFICER JOHN HANUSKA, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 3, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen (14)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

43

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                               **s/ Thomas M. Blewitt**

_____    **THOMAS M. BLEWITT**
                                               **United States Magistrate Judge**


**Dated: February 3, 2011**