**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEWART C. SMITH** | :   **CIVIL ACTION NO. 1:09-CV-0889** |
| | : |
|          **Plaintiff** | :   **(Judge Conner)** |
| | : |
| **v.** | : |
| | : |
| **OFFICER JOHN HANUSKA and** | : |
| **DAVID BIXLER** | : |
| | : |
|          **Defendants** | : |

**MEMORANDUM**

Presently before the court is the report and recommendation of Magistrate Judge Thomas M. Blewitt (Doc. 87), dated February 3, 2011, recommending that the court grant defendants' motion (Doc. 76) for summary judgment with respect to plaintiff's false arrest claims, and deny the motion with respect to plaintiff's illegal search and seizure claim against defendant Officer John Hanuska. Judge Blewitt further recommends that the court deny plaintiff's motions (Docs. 41, 61, 73) for summary judgment *in toto*. On February 17, 2011, both parties filed objections to the magistrate's R&R. (<u>See</u> Docs. 88, 89). For the reasons that follow, the court will adopt in part, and reject in part, the report and recommendation. (Doc. 87).

I.   <u>Background</u>[1]

This case arise from a June 4, 2007 traffic incident on Old Salem Road between Hokes Mill Road and West College Avenue in York County, Pennsylvania.

---

[1] The magistrate judge's report recites the undisputed facts of this case in greater detail. The factual background set forth in this opinion derives from the magistrate judge's recitation of the facts.

Officer John Hanuska ("Officer Hanuska") of the West Manchester Township Police Department was working the midnight shift, on patrol in a marked police cruiser. At approximately 12:20 a.m. Officer Hanuska was traveling on Old Salem Road, a dark, rural road surrounded by crop fields with no streetlights and no lane markers. Officer Hanuska spotted a white Chevy Cavalier parked on the roadway and pulled up behind it. Officer Hanuska testified that he stopped to check whether the occupant needed assistance. He further testified that he has arrested several drug users on that road, encountered stolen vehicles there, and that individuals often dump trash illegally in this vicinity.

Officer Hanuska exited his police cruiser and observed through the rear windshield of the Cavalier an individual, the plaintiff Stewart Smith ("Smith"), sit up from a reclined position. According to Officer Hanuska, Smith spun around, looked at him, then reached between the front seat in what appeared to be an attempt to hide an object. Smith disputes this recitation of the event. Smith contends that he pulled over to the side of the road to make a cellular phone call. He claims that he was reclined in his seat and saw Officer Hanuska pull up behind him, but he never made any movement towards the middle of the seats or any attempt to conceal any objects. (Doc. 79, Ex. D, at 5).

Officer Hanuska approached the vehicle with his flashlight illuminated and ordered Smith to exit. Officer Hanuska handcuffed Smith and conducted a pat down for weapons. (Doc. 79, Ex. A, at 7). In Smith's left pants pocket Officer Hanuska felt a small bag containing pills and a soft substance that he believed to be

2

marijuana. He pulled the bag out of Smith's pocket and placed Smith under arrest. The substance in the bag field tested positive for marijuana. After placing Smith in the patrol car, Officer Hanuska returned to the vehicle to check between the seat where he previously noticed Smith attempt to conceal an object. Officer Hanuska discovered a crack pipe between the front seat and the middle console. Officer Hanuska asserts that he only searched this area of the vehicle out of concern that a weapon was present. Smith disputes the nature of the search, contending that Officer Hanuska "ransacked" the vehicle with the assistance of other unknown officers.

Officer Hanuska transported Smith to the central booking station where officers processed Smith and released him. Officers informed Smith that he would receive a summons in the mail. At the time of the incident Smith was on Pennsylvania state parole, and officers contacted the parole board about the incident. On June 24, 2007, Pennsylvania State Parole Agent Brian Shaffer contacted Detective David Bixler ("Detective Bixler") to inquire whether drug charges were filed against Smith for the June 4, 2007 incident. Detective Bixler attempted to check with Officer Hanuska, however, Officer Hanuska was on vacation. Detective Bixler prepared and signed the affidavit of probable and proceeded to file a criminal complaint with the West Manchester Township Police Department, based on the events of June 4, 2007. The complaint charged Smith with one count of violating Title 35 Health and Safety Chapter 6 of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act for possession of marijuana

and drug paraphernalia. (Doc. 79, Ex. B). Smith was already in custody on a parole warrant on June 24, 2007 when the criminal complaint issued.

On August 23, 2007 a Magisterial District Judge conducted a preliminary hearing and bound over the charge to the York County Court of Common Pleas ("CCP") for trial. (Doc. 79, Ex. F). Smith filed a motion to suppress and a habeas corpus motion with the CCP. After the suppression hearing, by written order dated January 11, 2008, the Honorable John H. Chronister granted the motion to suppress. (Doc. 79, Ex. G). Judge Chronister did not find there to be exigent circumstances to justify the vehicle search. He also concluded that the protective pat down exceeded the scope of a permissible pat down noting that "the police officer, once he does not feel something hard, is deemed to be aware that there is no weapon and basically must stop." (Id. at 3). Judge Chronister also stated that the approach of the vehicle and decision to conduct a pat down was improper as there was "simply nothing about this situation which would give [Officer Hanuska] reason to believe that he was in danger." (Id. at 4). On January 14, 2008, Judge Chronister granted Smith's habeas corpus motion and dismissed the charges. (Id. at 6).

On May 11, 2009, Smith instituted this civil rights action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) against Officer Hanuska, Detective Bixler, Pennsylvania State Parole Agent Brian Shaffer, and Police Officer(s) John Doe(s) alleging excessive force, false arrest, illegal search and seizure, false imprisonment, violations of equal protection, malicious prosecution, selective law enforcement

4

practices, and conspiracy. (Doc. 1). Subsequent to a screening of the complaint, mandated by the Prison Litigation Reform Act of 1995, Pub. L. 104-134, 110 Stat. 1321 (codified at 28 U.S.C. § 1915A), and the court affording Smith an opportunity to amend the complaint, litigation proceeded on two grounds. The remaining causes of action are: (1) false arrest against Officer Hanuska and Detective Bixler, and (2) illegal search and seizure against Officer Hanuska.

Smith filed a motion for summary judgment (Doc. 41) on August 10, 2010, a second motion for summary judgment (Doc. 61) on September 30, 2010, and a third motion for summary judgment (Doc. 73) on December 2, 2010. Officer Hanuska and Detective Bixler filed a motion for summary judgment (Doc. 76) on December 3, 2010.[2] On February 3, 2011, Magistrate Judge Blewitt issued his report recommending that the court deny Smith's motions and grant Officer Hanuska and Detective Bixler's motion for summary judgment with respect to the false arrest cause of action. (Doc. 87). Both parties filed timely objections to the R&R on February 17, 2011. (See Docs. 88, 89).

Officer Hanuska and Detective Bixler assert that Magistrate Judge Blewitt erred in concluding that there are material issues of fact with respect to the search and seizure claim against Officer Hanuska. They contend that Officer Hanuska had probable cause to conduct the June 4, 2007 search of Smith's vehicle and that exigent circumstances obviated the need for a warrant. (Doc. 89 ¶¶ 37-39). They

---

[2] Magistrate Judge Blewitt's R&R provides a more thorough and detailed procedural history of the above-captioned matter. (See Doc. 87, at 1-8).

further contend that the initial detention of Smith and pat down constituted a valid Terry stop pursuant to <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). (<u>Id.</u> ¶¶ 40-41).

Smith argues that Judge Blewitt erred in concluding that summary judgment is warranted on the false arrest claims. He contends that Bixler obtained an arrest warrant for him without probable cause after Officer Hanuska previously arrested and released him on the same charge. (Doc. 88, at 1-2). Smith contends that Judge Blewitt also erred in concluding that Officer Hanuska had probable cause for the warrantless arrest. (<u>Id.</u> at 2-4). Smith asserts that a de facto arrest occurred prior to the pat down and discovery of contraband, and that such arrest was without probable cause. (<u>Id.</u>) Smith also asserts that the exclusionary rule should apply to his civil suit with respect to the false arrest charge because of his status as a parolee. (<u>Id.</u> at 5-6). Finally, Smith contends that he is entitled to summary judgment on the search and seizure claim based upon the principles of collateral estoppel and res judicata. He claims Judge Blewitt erred in concluding that the doctrine of collateral estoppel is inapplicable to the decision of the CCP suppressing the evidence in the state court proceeding. (<u>Id.</u> at 5).

## II.     <u>Standard of Review</u>

### A.     <u>Standard of Review for Cross-Motions for Summary Judgment</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. <u>See</u> Fed. R. Civ. P. 56©. The burden of proof is upon the non-moving party to come forth with "affirmative

evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56©, (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

In the instant matter, the parties have filed cross-motions for summary judgment. According to the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). Each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions. See Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1023 (3d Cir. 2008). When reviewing each motion, the court is bound to view the evidence in the light most favorable to the nonmovant. FED. R. CIV. P. 56; United States v. Hall, 730 F. Supp. 646, 648 (M.D. Pa. 1980).

**B.     Standard of Review for a Magistrate Judge's Recommendation**

Where objections to a magistrate judge's report and recommendation are filed, the court must perform a *de novo* review of the contested portions of the report.  Supinski v. United Parcel Serv., Civ. A. No. 06-0793, 2009 WL 113796, at *3 (M.D. Pa. Jan. 16, 2009) (citing Sample v. Diecks, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989); 28 U.S.C. § 636(b)(1)©).  "In this regard, Local Rule of Court 72.3 requires 'written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for those objections.'"  Id. (citing Shields v. Astrue, Civ. A. No. 07-417, 2008 WL 4186951, at *6 (M.D. Pa. Sept. 8, 2008)).

**III.   Discussion**

**A.     Res Judicata and Collateral Estoppel**

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . ."  Montana v. United States, 440 U.S. 147, 153 (1979).  Collateral estoppel specifically bars relitigation of an issue that was conclusively determined in a prior adjudication and that was essential to the original judgment.  Witkowski v. Welch, 173 F.3d 192, 198 (3d Cir. 1999); Venuto v. Witco Corp., 117 F.3d 754, 758 (3d Cir. 1997).  By foreclosing subsequent disputes over issues on which a court has ruled, collateral estoppel promotes fairness and certainty, while preventing the

8

wasteful expenditure of resources upon issues already resolved through adversarial proceedings. See Allen v. McCurry, 449 U.S. 90, 94 (1980); Montana, 440 U.S. at 153-54; Witkowski, 173 F.3d at 198-99. It is well settled that the principles of collateral estoppel apply to § 1983 claims. Allen, 449 U.S. at 102-05; Ingram v. Lupas, 353 Fed. App'x 674, 676 (3d Cir. 2009).

Collateral estoppel applies when four elements are satisfied: "(1) An issue decided in a prior action is identical to one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." Jones v. United Parcel Service, 214 F.3d 402, 405 (3d Cir. 2000). Courts have routinely applied collateral estoppel to Fourth Amendment claims in civil proceedings where the issue has been previously litigated in prior criminal proceedings. See James v. Heritage Valley Fed. Credit Union, 197 Fed. App'x 102, 105 (3d Cir. 2006).

Magistrate Judge Blewitt concluded that the doctrines of *res judicata* and collateral estoppel are inapplicable to Smith's Fourth Amendment claims because "the issues decided by the CCP with respect to [Smith's] suppression motion and habeas motion are not identical to the issues presented in the instant action." (Doc. 87, at 28). According to Judge Blewitt, the mere fact that the CCP found the search improper does not establish that Officer Hanuska lacked probable cause to arrest

9

Smith, or that Detective Bixler lacked probable cause to issue the criminal complaint.  (Id.)  Probable cause determinations are made on the totality of the circumstances and do not require evidence of each element of an offense, such as would be necessary to support a conviction.  Adams v. Williams, 407 U.S. 143, 149 (1972); Kokinda v. Breiner, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008); see also Illinois v. Gates, 462 U.S. 213, 230 (1983) ("totality-of-the-circumstances" approach to probable cause analysis).

The court finds Judge Blewitt adequately and accurately addressed and rejected the applicability of collateral estoppel to the false arrest claims.  However, it does not appear that Judge Blewitt addressed the applicability of collateral estoppel to the illegal search and seizure claim.  Third Circuit precedent makes clear that defendants in a § 1983 action may raise a collateral estoppel defense when a plaintiff attempts to relitigate an issue decided adversely against him in a state criminal proceeding.  Ingram, 353 Fed. App'x at 676 (citing Anela v. City of Wildwood, 790 F.2d 1063, 1068 (3d Cir. 1986).  The opposite, however, is not true.  A plaintiff's assertion that collateral estoppel bars a defendant in a § 1983 action from relitigating a Fourth Amendment issue decided adversely to the government in a state court criminal prosecution is without support in this jurisdiction.  Collateral estoppel is inappropriate because Officer Hanuska was not a party in Smith's criminal proceedings, nor is Officer Hanuska in privity with the government.  A defendant in a § 1983 action, sued in his individual capacity, is not considered to be in privity with the government in a prior criminal prosecution.  See Smith v. Holtz,

10

210 F.3d 186, 199 n.18 (3d Cir. 2000) (citing <u>Morgan v. Gertz</u>, 166 F.3d 1307, 1309

(10th Cir. 1999)); <u>see</u> <u>also</u> <u>Kinslow v. Ratzlaff</u>, 158 F.3d 1104, 1106 (10th Cir. 1998)

(holding that the dismissal of state criminal charges against plaintiff for lack of

probable cause did not preclude defendant police officers in § 1983 action from

relitigating the legality of the search and seizure because the officers were not

parties to the criminal prosecution, were not in privity with the state, and officers'

personal interests, which are not the same as the state's interests, were not at stake

in the criminal prosecution); <u>Tierney v. Davidson</u>, 133 F.3d 189, 195 (2d Cir. 1998)

(state court's ruling suppressing evidence not entitled to preclusive effect in § 1983

action against police officers as officers were not parties to the criminal prosecution

nor in privity with the state); 18A Charles A. Wright, Arthur R. Miller &

Edward H. Cooper, Federal Practice and Procedure 2d § 4458 (2002) ("A

judgment against a government or one government official does not bind a different

official in subsequent litigation that asserts a personal liability against the

official[.]").  Smith's objection is without merit.  Collateral estoppel does not bar

relitigation of the Fourth Amendment claims in this civil proceeding.

## B.      <u>False Arrest Claims</u>

To succeed on a Fourth Amendment false arrest claim, a plaintiff must

establish that the arresting individual lacked probable cause for the arrest.  <u>See</u>

<u>Startzell v. City of Philadelphia</u>, 533 F.3d 183, 204 (3d Cir. 2008); <u>Mills v. City of</u>

<u>Harrisburg</u>, 589 F. Supp. 2d 544, 551 (M.D. Pa. 2008).  Probable cause to arrest

requires proof of facts and circumstances that would convince a reasonable, and

honest officer that the person arrested has committed a crime.  <u>Lippay v. Christos</u>, 996 F.2d 1490, 1502 (3d Cir. 1993).  Typically, in a § 1983 action, the existence of probable cause is a question of fact for the jury.  <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 401 (3d Cir. 1997).  However, a court may find probable cause as a matter of law when the evidence would not reasonably support a contrary finding.  <u>Id.</u>

### 1.    <u>Detective Bixler</u>

Magistrate Judge Blewitt concluded that Detective Bixler is entitled to summary judgment on the false arrest claim because he never arrested Smith. (Doc. 87, at 32).  In Smith's objections, he reasserts his argument that Detective Bixler obtained a warrant "without any new probable cause" resulting in Smith's arrest for the same charge a second time.  (Doc. 88, at 1-2).  Although Detective Bixler filed the criminal complaint and affidavit of probable cause, he simply never arrested Smith.  Smith was already in custody on a parole warrant at the time the criminal complaint issued on June 24, 2007.  The court finds Smith's objection to be without merit and adopts Judge Blewitt's recommendation as to Detective Bixler.

### 2.    <u>Officer Hanuska</u>

Officer Hanuska arrested Smith without a warrant, thus, for the arrest to be lawful, it must be supported by probable cause.  Judge Blewitt concluded that, based on the totality of the circumstances, Officer Hanuska had probable cause to arrest Smith.  (Doc. 87, at 35, 39).  Judge Blewitt explained:  Officer Hanuska observed Smith make a furtive movement in what appeared to be an attempt to hide an object from his view.  A protective pat down search revealed a sandwich

bag with a small amount of marijuana, and Officer Hanuska discovered a crack pipe between the seats of the vehicle. On the basis of this evidence, Judge Blewitt concluded that the circumstances "justified a reasonable belief that an offense was being committed" and Officer Hanuska's "observations would reasonably support a finding that he had probable cause to arrest" Smith. (Doc. 87, at 37). Furthermore, Judge Blewitt noted that a Pennsylvania Magisterial District Judge determined that Officer Hanuska established a *prima facie* case against Smith at the preliminary hearing on the complaint, thus, "there was some initial independent judicial finding that probable cause existed" with respect to Smith's arrest on the drug charge. (Doc. 87, at 37-38).

Smith contends that he was placed under arrest immediately upon Officer Hanuska's approach of his vehicle because he was ordered out of the vehicle and thereupon placed in handcuffs and subjected to a pat down search. Smith states that "officer Hanuska had neither reasonable suspicion of criminal activity nor probable cause at its inception and by ordering plaintiff from his vehicle <u>and</u> placing him in handcuffs the officers conduct transformed the encounter into a de facto arrest, which requires probable cause prior to and before any illegal contraband was found." (Doc. 88, at 3-4). Moreover, he claims that, at the time of the de facto arrest, no probable cause existed. Smith also claims that the court should apply the exclusionary rule in the probable cause analysis. (Doc. 88, at 5-6).

Officer Hanuska counters that he arrested Smith only after the protective pat down revealed a small amount of marijuana. He asserts that "there is no evidence

of record that [Smith] was placed into handcuffs and arrested prior to the finding of drugs in [his] pockets during the pat down search." (Doc. 91, at 14). To the contrary, the record contains the testimony of Officer Hanuska given before the CCP during the suppression hearing. (Doc. 79, Ex. A). Officer Hanuska testified that after observing Smith apparently hide something in between the seats:

> Hanuska: I approached in a safe fashion and asked [Smith] to step out of the vehicle in concern for my safety at that point.
> DA: And so you had him step out of the vehicle. What then did you do?
> Hanuska: **I handcuffed him and patted him down** looking for weapons.
> DA: Is that because of the movements he made?
> Hanuska: Yes, sir.

(Id. at 7) (emphasis added). However, Officer Hanuska did not advise Smith he was under arrest until he discovered the marijuana in Smith's pocket. (Id. at 8).

Courts acknowledge that it may "be difficult to distinguish between a *Terry* stop, which requires only reasonable suspicion, and a *de facto* arrest, which must be supported by probable cause." United States v. Johnson, 592 F.3d 442, 447-48 (3d Cir. 2010) (citing United States v. Sharpe, 470 U.S. 675, 685 (1985) (noting that cases "may in some instances create difficult line-drawing problems in distinguishing an investigative stop from a *de facto* arrest")). The Third Circuit has recognized that, under some circumstances, approaching a vehicle with weapons ready or drawn does not constitute an arrest per se. Id. at 448 (citing United States v. Edwards, 53 F.3d 616, 619 (3d Cir. 1995)). "Nor does placing a suspect in handcuffs while securing a location or conducting an investigation automatically transform an

otherwise-valid *Terry* stop into a full-blown arrest." <u>Id.</u> However, 'the use of handcuffs substantially aggravates the intrusiveness of a <u>Terry</u> stop.' <u>Hall v. Raech</u>, 677 F. Supp. 2d 784, 794 (E.D. Pa. 2010) (quoting <u>United States v. Glenna</u>, 878 F.2d 967, 973 (9th Cir. 1989)).   Thus, the use of handcuffs during an investigative detention must be justified by the circumstances. <u>Johnson</u>, 592 F.3d at 452-53; <u>Hall</u>, 677 F. Supp. 2d at 794 (use of handcuffs during <u>Terry</u> stop permissible where reasonably necessary to protect officers and maintain status quo).

Although Judge Blewitt correctly concluded that <u>after</u> Officer Hanuska discovered the marijuana in Smith's pocket probable cause for the arrest existed, Judge Blewitt did not consider whether the arrest occurred prior to that discovery—that is whether ordering Smith out of the vehicle and immediately placing him in handcuffs transformed an investigatory stop into a de facto arrest. The court concludes that there are disputed issues of material fact as to whether the arrest was supported by probable cause.  A reasonable jury could conclude that the circumstances establish a de facto arrest prior to the discovery of any contraband.  Thus, a jury will have to determine whether Officer Hanuska's seizure of Smith amounted to an unlawful de facto arrest, a proper investigatory stop supported by reasonable suspicion, or a reasonable response to a threat to the officer's safety.  The court therefore rejects Judge Blewitt's conclusion that

summary judgment is warranted on Smith's false arrest claim against Officer Hanuska.[3]

## C.     <u>Illegal Search and Seizure</u>

Judge Blewitt concluded that there are disputed issues of fact as to whether Officer Hanuska's conduct in approaching Smith's vehicle violated Smith's Fourth Amendment rights against unreasonable search and seizure, and whether exigent circumstances existed to search Smith's vehicle.  (Doc. 87, at 41).  Magistrate Judge Blewitt, however, did not discuss the standard for a stop, or whether the June 4, 2007 incident qualified as an investigatory stop or otherwise.

It is not altogether clear how to classify the initial actions by Officer Hanuska. Officer Hanuska came upon Smith's car on the side of a one-lane, rural road after midnight.  Officer Hanuska did not instigate a traffic stop.  The vehicle was simply parked on the side of the road.  He claims he pulled up behind the vehicle to conduct a spot-check, in order to determine if the owner needed assistance. However, once Officer Hanuska noticed an individual sit up from a reclined position and apparently attempt to conceal an object in between the seats, the circumstances ostensibly changed.  Officer Hanuska asserts that, given Smith's initial conduct, he had a reasonable suspicion to warrant an investigatory stop,

---

[3] Smith's assertions that the exclusionary rule should apply to his § 1983 false arrest claims because of his parolee status are without merit and the court rejects them.  The exclusionary rule is not applicable to § 1983 actions.  <u>See</u> <u>Padilla v. Miller</u>, 143 F. Supp. 2d 479, 491 (M.D. Pa. 2001).

particularly considering the time of night, the location, and his knowledge about the area. (Doc. 90, at 13-14).

Investigatory stops, commonly known as <u>Terry</u> stops, are permissible under the Fourth Amendment "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000); <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968); <u>United States v. Goodrich</u>, 450 F.3d 552, 559 (3d Cir. 2006). Though the standard requires a showing considerably less than probable cause, a hunch or unspecified suspicion of criminal activity is insufficient. <u>Wardlow</u>, 528 U.S. at 123-24. The court must consider the totality of the circumstances in analyzing the validity of an investigatory stop. <u>United States v. Cortez</u>, 449 U.S. 411, 417-18 (1981). Thus, "even factors independently susceptible to innocent explanation can collectively amount to reasonable suspicion." <u>United States v. Brown</u>, 448 F.3d 239, 252 (3d Cir. 2006) (citations and quotations omitted). Furthermore, law enforcement officials may rely on "their own experience and specialized training to make inferences from and deductions about the cumulative information available to them, that might well elude an untrained person." <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002) (citations and quotations omitted).

Contemporaneous with a valid <u>Terry</u> stop, an officer may frisk the individual—conduct a protective pat down of the individual's clothing for weapons—to ensure the officer's safety. <u>Terry</u>, 392 U.S. at 27. However, the stop and the frisk are independent actions. <u>United States v. Gatlin</u>, 613 F.3d 374, 378 (3d Cir. 2010). "[T]o proceed from a stop to a frisk, the police officer must reasonably

17

suspect that the person stopped is armed and dangerous." <u>Arizona v. Johnson</u>, ---

U.S. ---, 129 S. Ct. 781, 784 (2009).  If a reasonably prudent man in the circumstances

would believe his safety or the safety of others is at risk, a protective pat down is

warranted.  <u>Terry</u>, 392 U.S. at 27.

 In the instant matter, Smith disputes that he made any movement toward the

center console of his vehicle, or that he made an attempt to conceal an object from

Officer Hanuska's view.  He claims that he was on the telephone when Officer

Hanuska pulled up.  He alleges that Officer Hanuska asked him to exit the vehicle

and immediately thereafter handcuffed Smith and conducted a pat down.  Officer

Hanuska contends that he knew the area to be one where crime was committed, it

was late at night, and he observed Smith attempt to conceal an object after spotting

Officer Hanuska approaching.  There are clearly disputed issues of material fact as

to whether the circumstances gave rise to a reasonable suspicion of criminal

activity to warrant an investigatory <u>Terry</u> stop.  A reasonable juror could conclude

that there was no basis for Officer Hanuska to reasonably believe criminal activity

was afoot or to feel threatened by Smith to warrant a protective pat down search

that revealed the marijuana.  A jury could conclude that the initial seizure was not

justified at its inception or that the initial seizure became unreasonable by virtue of

its intrusiveness, thereby violating the Fourth Amendment.

 The illegal search and seizure claim also encompasses the subsequent search

of Smith's vehicle.  It is undisputed that Smith was informed that he was under

arrest and escorted to Officer Hanuska's police cruiser prior to Officer Hanuska's

search of the vehicle. Officer Hanuska cites to <u>New York v. Belton</u>, 453 U.S. 454 (1981) for the proposition that the search of the vehicle following Smith's arrest was reasonable under the Fourth Amendment. (Doc. 90, at 15). In <u>New York v. Belton</u>, the Supreme Court held that an officer may, consistent with the Fourth Amendment, search the passenger compartment of a vehicle incident to a recent occupant's arrest. Recently, however, the Supreme Court limited the scope of its holding in <u>Belton</u>. 453 U.S. 454. In <u>Arizona v. Gant</u>, --- U.S. ---, 129 S. Ct. 1710 (2009), the Court held that such a search is reasonable "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." <u>Id.</u> at 1723-24. Absent such circumstances, police must acquire a warrant or establish another exception to the warrant requirement. <u>Id.</u> at 1724.

Smith was not in reaching distance of the vehicle at the time of the vehicle search. Officer Hanuska testified before the CCP that he returned to the vehicle after placing Smith in his police cruiser due to his "suspicions about what [Smith] had stuffed between the seats. I was concerned it might have been a weapon, and I didn't want to walk away from the vehicle not knowing there was a weapon in it or something else in that regard." (Doc. 79, Ex. A, at 9). Officer Hanuska contends that he possessed probable cause for the search and exigent circumstances existed to justify the immediate search without first obtaining a warrant. (Doc. 90, at 11-12).

19

The existence of exigent circumstances is an established exception to the warrant requirement.  See Steagald v. United States, 451 U.S. 204, 211-12 (1981); Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006).  Exigent circumstances include: "hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others."  United States v. Coles, 437 F.3d 361, 366 (3d Cir. 2006).  The court looks to the totality of the circumstances in determining whether exigent circumstances existed.  See United States v. Sculco, 82 F. Supp. 2d, 410, 417 (E.D. Pa. 2000).  The court agrees with Judge Blewitt and concludes that a reasonable jury could find that exigent circumstances did not exist to justify the warrantless search of the vehicle.  Summary judgment is therefore inappropriate on Smith's illegal search and seizure claim.

**IV.**  **Conclusion**

For the foregoing reasons, the court adopts Judge Blewitt's recommendation to grant summary judgment in favor of Detective Bixler on the false arrest claim, and to deny summary judgment on illegal search and seizure claim against Officer Hanuska.  The court rejects the recommendation that summary judgment be granted in favor of Officer Hanuska on the false arrest claim.  A reasonable jury could conclude that the use of handcuffs transformed the investigative detention into an arrest for which probable cause was required and that probable cause did not exist.

An appropriate order will issue.



                                        S/ Christopher C. Conner
                                    CHRISTOPHER C. CONNER
                                    United States District Judge


Dated:        March 17, 2011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEWART C. SMITH** | : | **CIVIL ACTION NO. 1:09-CV-0889** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER JOHN HANUSKA and** | : | |
| **DAVID BIXLER** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 17th day of March, 2011, upon consideration of the report of

the magistrate judge (Doc. 87), wherein the magistrate judge recommends that the

motion (Doc. 76) for summary judgment filed by defendants John Hanuska and

David Bixler be granted with respect to the false arrest claim and denied with

respect to the illegal search and seizure claim, and that the motions (Docs. 41, 61,

73) for summary judgment filed by plaintiff Steward Smith be denied, and upon

further consideration of both parties' objections (Docs. 88, 89) to the magistrate

judge's report and recommendation, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1. The report and recommendation (Doc. 87) is ADOPTED in part, and
   REJECTED in part as follows:

   a. ADOPTED with respect to the false arrest claim against
      David Bixler and the illegal search and seizure claim
      against Officer John Hanuska.

   b. REJECTED with respect to the false arrest claim against
      Officer Hanuska.

2.     Defendants' motion (Doc. 76) is GRANTED in part, and DENIED in part as follows:

     a.     The motion  is GRANTED as to the claim against David Bixler.

     b.     The motion is DENIED in all other respects.

3.     Plaintiff's motions (Docs. 41, 61, 73) for summary judgment are DENIED.

4.     The Clerk of Court is directed to defer the entry of judgment on the claims described in Paragraph 2(a) until the resolution of all claims.

5.     A scheduling order shall issue by further order of the court.


       S/ Christopher C. Conner
       CHRISTOPHER C. CONNER
       United States District Judge